DREW, Justice.
This is an appeal from a final decree validating general obligation bonds of the Town of Surf side in the amount of $150,-000 for the purpose of acquiring and improving municipal parking lots and erecting parking meters thereon, approved by the freeholders at an election called for the specific purpose of approving or disapproving this particular issue of bonds. We entertain this direct appeal from the trial court under the authority of amended Article V of the Constitution of this State, effective July 1, 1957, F.S.A., giving this Court original appellate jurisdiction as a matter of right from final decrees of the trial courts “ * * * in proceedings for the validation of bonds and certificates of indebtedness.” Section 4(b), Article V, Constitution of Florida.
The question presented here is a narrow one raising the sole issue of whether “a majority of the freeholders who are qualified electors residing in such * * * Municipalities” participated in such election, it being conceded that of those participating “a majority of the votes cast in [the] election” were in favor of the issuance of said bonds. (The quoted language is from Section 6, Article IX of the Florida Constitution.)
The factual situation giving rise to this question is found in paragraph sixth of the final decree appealed from, reading as follows, viz.:
“Sixth: That for the purpose of Section 6 of Article 9 of the Florida Constitution the ten qualified freeholders who attempted to vote but failed to have their votes recorded because of lack of familiarity with the voting machine participated in the election. The record shows that on the machine used for the bond election 383 votes were cast for the bonds and 94 against the bonds for a total number of votes cast in the amount of 477. However, the return sheet shows that before the election the number on the protective counter of the machine read 014932, and at the closing of the polls that counter read 015417, indicating that a total of 487 persons had entered the machine, which was used only to record votes on the proposition to issue the aforementioned bonds, and had operated the mechanism necessary to register on the protective counter. Ten of the persons so entering and operating the machine, according to testimony in the record, depressed the *581 levers to indicate their choices on the bond proposition and then, not knowing better, raised those levers before throwing the master lever to record their votes. These 487 voters, combined with the sixteen qualified freeholders who cast absentee ballots on the bond proposition, equal 503, or more than the necessary one-half of the 1002 qualified freeholders then residing in the Town of Surfside. The fact that in the instant case the voters entered and operated the machine which was used only for the purpose of voting on the bonds distinguishes this case from that of State 'r. Dade County, 144 Fla. 448, 198 So. 102, where the same machines were used for both a bond proposition and a primary election and where the entering of the machine and operation of the master lever would not show an intent on the part of the voter to participate in the bond election. The same principle renders the cases of Special Tax School District No. 3, Dade County v. State, 153 Fla. 292, 14 So.2d 405; State v. City of Miami Beach, 156 Fla. 546, 23 So.2d 720; and State v. City of Miami, [Fla.] 53 So.2d 524, and State v. Dade County, [Fla.] 54 So.2d 57, not controlling.”
and in paragraph 4(c), (d) and (e) of the Stipulated Transcript of Record of the respective parties to this appeal, reading as follows:
“(c) The Town Clerk certified that 1,002 freeholders were qualified to vote. Of this number, participation by 502 was necessary to make the election effective.
“(d) Separate voting machines were used for this freeholders’ election and the protective counters on the machines showed that 487 persons entered the machines which contained only the question of approval or disapproval of the bonds. Absentee ballots numbering sixteen were received and tabulated. The total of the 487 entering the machines, plus the sixteen absentee ballots which were received and tabulated equals 503, or one more than enough to make the election effective.
“(e) However, the voting machines showed 383 votes were cast for the bonds and 94 against the bonds, for a total of 477, or ten (10) less than shown on the protective counters.”
In this case it is established without question that there was but one election for the sole purpose of obtaining the expression of the qualified freeholders of the municipality on the issuance of one issue of bonds for one particular purpose. When the qualified elector appeared at the polls, had his name checked by the officials in charge of said election and entered the voting machine and closed the curtain, such voter as a matter of law participated in this election. He could have entered the enclosure of the voting machine for no other purpose and whether his vote was actually registered as a yes or no vote does not enter into the determination of the question of whether he participated in the election under the requirements of Section 6 of Article IX. In a situation such as that shown by the record in this case, where there is but one question on the ballot, there is but one election, and the voter who enters the machine and closes the curtain behind him, thereby registering his vote on the main counter, participates in such election.
It is argued by the State that our opinions in the cases cited in the opinion of the trial judge, and particularly in the case of State v. City of Miami Beach, 156 Fla. 546, 23 So.2d 720, require a different result. We do not agree. On the contrary such cases are clear authority to uphold the decree appealed from. In State v. City of Miami Beach, supra, the ballot, in addition to containing four separate and distinct propositions for the issuance of bonds, also, as stated by Justice Thomas in that opinion, was “vastly complicated by the fact that there were submitted to the electors at the same time and on the same bal *582 lot two other propositions — i.e. the purchase of a gasworks and the levy of millage for advertising.” Mr. Justice Thomas, in writing for the Court, held: ■
“If each issue has a total of affirmative and negative votes exceeding a majority of those qualified to indicate a choice, it is obvious that the required number participated, * *
This result was required in this case in order to preserve to the elector his rights under the Constitution not only to participate in the election on any one of the four items as to the issuance of bonds, but also to refuse to participate in such election, both rights being protected under the Constitution. This is obvious from the language used by Justice Thomas when he said:
“ * * * it is patent that the four proposed bond issues were independent and severable. Either the one for the park or the auditorium or the hospital or the parking area could be issued without affecting the others. They could have been submitted at different times, and their consolidation was solely a matter of convenience. This applies also to the wholly disconnected propositions of increased millage for publicity and purchase of a gas plant. Had the issues been presented to the electorate at different elections a voter would have had the opportunity to make a choice in a particular issue and abstain from another. Where, as here, they are consolidated he must, if appel-lee’s contention be correct, in order to vote in one, be placed in the position of participating in the other.”
In State v. City of Miami, Fla., 53 So.2d 524, the ballot contained seven distinct propositions. The Court held that while each proposition was voted on at the same time, it constituted seven different elections and thereupon concluded :
“The elector could exercise a choice of voting in any or all, or could abstain as he desired.”
Having reached the conclusion that the ten voters who entered the voting machine and closed the curtain behind them participated in the election held for the sole purpose of voting yes or no on the single issue of bonds to be issued for one purpose, the decree appealed from must be and is, therefore,
Affirmed.
TERRELL, C. J., and ROBERTS and O’CONNELL, JJ., concur.
THOMAS, J., dissents.